UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE M. D.,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No.: 22-cv-0318-BEN-DEB<br><br>**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[DKT. NOS. 14, 15, and 16]** |

This Report and Recommendation is submitted to United States District Judge Roger T. Benitez pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1.c.

**I.    INTRODUCTION**

Plaintiff Joyce M. D. seeks review of the Commissioner of Social Security's denial of Supplemental Security Income benefits. Dkt. No. 1. The parties filed cross-motions for summary judgment, and Plaintiff replied. Dkt. Nos. 15–17. For the reasons set forth below, the Court **RECOMMENDS DENYING** Plaintiff's Motion for Summary Judgment (Dkt. No. 15) and **GRANTING** Defendant's Motion for Summary Judgment (Dkt. No. 16).[1]

---

[1] The Court also recommends denying Plaintiff's motion at Docket No. 14 as filed in error and duplicative of Docket No. 15.

## II.   PROCEDURAL BACKGROUND

Plaintiff applied for Supplemental Security Income alleging disability beginning March 22, 2020. AR 16.[2] The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. *Id.* Plaintiff requested and received an Administrative Law Judge ("ALJ") hearing, which the ALJ held on July 2, 2021. *Id.* at 16, 36–52. Following the hearing, the ALJ issued a written decision finding Plaintiff was not disabled. AR 16–38. The Appeals Council denied Plaintiff's request for review (AR 1–5), and this appeal followed.

## III.   SUMMARY OF THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(4). At step one, the ALJ found Plaintiff had "not engaged in substantial gainful activity since April 27, 2020, the application date." AR 18.

At step two, the ALJ found Plaintiff had the following severe mental impairments: anxiety, personality disorder, and impulse disorder. *Id.* at 18–19. Plaintiff's diagnoses included post-traumatic stress disorder, generalized anxiety disorder, trauma and stressor related disorder, and persistent depressive disorder. *Id.* at 20–22.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled those in the Commissioner's Listing of Impairments. AR 21–24. The decision then addressed the "paragraph B" criteria.[3] AR 22. The ALJ found Plaintiff had mild limitations in three of the four functional areas: (1) understanding, remembering, or applying information; (2) concentrating, persisting, or

---

[2] "AR" refers to the Administrative Record lodged on June 28, 2022. Dkt. No. 10. The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by the CM/ECF.

[3] These criteria are set forth in 20 C.F.R. § 416.920a(c)(2).

maintaining pace; and (3) adapting or managing herself. AR 22. He found a moderate limitation applied to the fourth functional area, interacting with others. *Id.*

Before proceeding to step four, the ALJ found Plaintiff had the residual functioning capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> [Plaintiff] can respond appropriately to supervisors and co-workers in a task-oriented setting where contact with others is casual and no more than occasional and she should not work in a setting that includes constant/regular public contact or more than occasional handling of customer complaints.

AR 24.

At step four, the ALJ found Plaintiff unable to perform her past relevant work as a paralegal because the demands of that position would exceed the RFC. AR 29.

At step five, the ALJ concluded Plaintiff could perform the requirements of representative occupations that exist in significant numbers in the national economy, such as laundry worker, agricultural harvester, and floor waxer. AR 30, 49. The ALJ, therefore, found Plaintiff not disabled and denied her request for disability benefits.

## IV.  STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether the ALJ applied the proper legal standards and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotations and citations omitted), *superseded by regulation on other grounds*. It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks and citation omitted). The Court may not impose its own reasoning to affirm the ALJ's decision. *See Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). "[I]f evidence exists to support more than one rational interpretation, [the Court] must defer to the [ALJ's] decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ." *Id.* at 1196. The Court will not reverse if any error is harmless. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (2015) ("ALJ errors in social security cases are harmless if they are inconsequential to the ultimate nondisability determination and that a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination.") (internal citations and quotation omitted).

"The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 416.920c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, § 416.920c(b)(2)." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Supportability means a medical source must support the medical opinion by explaining the "relevant . . . objective medical evidence." *Id.* at 791. Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 791–92 (internal citations omitted). The ALJ is required to explain the two most important factors, supportability and consistency, but is not required to explain how he considered other factors. 20 C.F.R. § 416.920c(b)(2).[4]

---

[4] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant

## V. DISCUSSION

Plaintiff challenges the ALJ's treatment of four medical source opinions regarding Plaintiff's functional capacity. Plaintiff specifically argues the ALJ's consideration of those opinions does not comply with the articulation requirement of 20 C.F.R. § 416.920c(b).[5] Dkt. No. 15 at 17. The Court evaluates the ALJ's discussion of each opinion in turn and finds the ALJ complied with the regulations.

### A. Dr. Amado

Dr. Amado, a state agency mental health consultant, reviewed Plaintiff's medical record and opined Plaintiff had moderate limitations in understanding, remembering or applying information; moderate limitations in interacting with others; moderate limitations in concentration, persistence, or pace; and moderate limitations in adapting or managing herself. AR 70–71.

The ALJ found Dr. Amado's opinion "minimally persuasive" and "not consistent with the evidence as a whole as of or after the claimant's protective filing date." AR 27. The ALJ explained his reasoning as follows:

> Although it was supported by a summary analysis of the claimant's high average intellectual functioning, mental health treatment history, and symptom complaints of post-traumatic stress disorder, depression, and anxiety, it was not consistent with the evidence as a whole as of or after the claimant's protective filing date. Dr. Amado placed too much reliance on the history prior to the protective filing date. Specifically, a longitudinal review of the claimant's course of treatment and symptom complaints showed that

---

(including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 416.920c(c)(1)–(5).

[5] 20 C.F.R. § 416.920c(b) states: "We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."

5

>her mental health conditions were largely related to her behavior and interaction with others based on the status of her relationship with her children.

AR 27–28.

Plaintiff argues "the ALJ failed to specify which evidence he apparently deemed uninformative and why he believed it was not probative of Plaintiff's functioning, thus frustrating meaningful review of the soundness of his reasoning." Dkt. No. 15 at 19. Plaintiff further contends that the ALJ failed to recite any medical or nonmedical evidence supporting his conclusion that Dr. Amado's findings were inconsistent with the record as a whole. *Id.* at 20.

The Court finds no error in the ALJ's analysis. In partially rejecting Dr. Amado's findings, the ALJ found they relied too heavily on Plaintiff's "history prior to the protective filing date." AR 27. The ALJ considered other opinions, including those of Drs. Nicholson, Katzman, Jacobs and Kalmar, all of whom opined Plaintiff had non-severe conditions. AR 28. The ALJ also explained Plaintiff's testimony and activities of daily living supported a moderate severity rating regarding Plaintiff's ability to interact with others, and a mild severity rating regarding the other functional evaluations. *Id.* at 28–29. Based on the evidence in the record, the ALJ concluded Plaintiff had mild "mental health conditions" that "were largely related to her behavior and interaction with others based on the status of her relationship with her children." AR 28–29 (citing AR 75–90 (Dr. Kalmar's opinions), 85 (Dr. Jacobs' opinions), 443–451 (Dr. Nicholson's opinions), 286–91 (Dr. Katzman's opinions), 42, 44 (Plaintiff's testimony)).

In sum, the ALJ cited and considered and evaluated Dr. Amado's opinion against other evidence in the record and concluded Plaintiff's mental health limitations were, in part, less limited than what Dr. Amado opined. This both complies with the articulation requirement of 20 C.F.R. § 416.920c(b) and constitutes substantial evidence supporting the ALJ's conclusion. *Toback v. Kijakazi*, No. 22-15243, 2023 WL 4261284, at *1 (9th Cir. June 29, 2023) (no error where the ALJ "provided valid reasons supported by substantial evidence . . . including . . . how much weight to give to each opinion, how to interpret the

opinions, and how to translate the opinion evidence into the statutory disability determination").

### B. Dr. Katzman

Dr. Katzman evaluated Plaintiff on January 14, 2020. AR 286. Dr. Katzman administered a series of psychological tests and made clinical observations. AR 286–91. Her diagnostic impressions included post-traumatic stress disorder, generalized anxiety disorder, and persistent depressive disorder. AR 25, 290. Dr. Katzman did not evaluate the paragraph B functional criteria, however, because her services were retained in connection with Plaintiff's child welfare proceeding (she ultimately recommended Plaintiff undergo family counseling with her children). AR 25, 28, 286–91.

The ALJ found Dr. Katzman's report "partially persuasive since it was supported by an in person exam, including multiple cognitive tests . . . ." AR 28. The ALJ wrote, "Dr. Katzman did not include functional limitations and only recommended counseling," and found "the record as a whole, including individual therapy, was more consistent with moderate limitations in the claimant's ability to interact with others." *Id.*

Plaintiff argues the ALJ erroneously concluded that Dr. Katzman's report did not contain functional limitations. Dkt. No. 15 at 22. The Court has examined Dr. Katzman's report and agrees with the ALJ that it did not contain functional limitations. Instead, Dr. Katzman performed and assessed ten psychological tests/evaluations "to better understand [Plaintiff's] current level of functioning and to identify her strengths and weaknesses." AR 286. Dr. Katzman chose particular tests and evaluations in the context of Plaintiff's child welfare proceeding, wherein Plaintiff was attempting to regain custody of her children. AR 286–89. Although Dr. Katzman evaluated aspects of Plaintiff's psychological functioning, she did not provide any functional limitation ratings. *Id.*

The ALJ did, however, consider Dr. Katzman's report in assessing Plaintiff's functional limitations. AR 20–21 (citing Exhibit 2F (AR 286–91)). The ALJ expressly and correctly stated that Dr. Katzman concluded her analysis by advising Plaintiff "to be

involved with individual counseling and family counseling with her children." AR 25 (citing AR 291 (Dr. Katzman's Summary and Recommendations)).

Plaintiff also claims the ALJ committed legal error by failing to acknowledge and consider Dr. Katzman's cognitive testing results. Dkt. No. 15 at 23. Plaintiff is incorrect. *See* AR 25. The ALJ wrote: "On January 14, 2020, the claimant underwent a psychological evaluation by [Dr. Katzman] that included cognitive testing. (Exhibit 2F) Cognitive testing results showed that she was in the average range of cognitive functioning, but there was a discrepancy in scores and she lacked successful performance in certain areas which were suggestive of anxiety interfering with her performance." AR 25; *see also* AR 20–21 (discussing Dr. Katzman's cognitive testing results in assessing Plaintiff's four functional areas).

Plaintiff's argument that "Dr. Katzman's findings not only contradict the ALJ's assessment that Plaintiff has only mild limitations in concentrating, persisting, or maintaining pace, but also his conclusion that Plaintiff's alleged difficulty focusing and completing tasks was unsupported by the record" is also inaccurate. Dkt. No. 15 at 23. As discussed, Dr. Katzman rendered no opinion about Plaintiff's functional limitations. AR 286-90. Moreover, the ALJ evaluated the record as a whole (including Dr. Katzman's report) and reached the following conclusion regarding the third functional area:

> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitations. The claimant reported difficulties with completing tasks, concentrating, following instructions, and decreased interest in normal activities. (Exhibits 3E; 6F) Yet, she also said that she could pay attention for 30 minutes and could sometimes follow written instructions (Exhibit 3E) <u>She underwent cognitive testing and she scored an average range, but her scores were suggestive of anxiety interfering with her performance. (Exhibit 2F)</u> Upon mental status exam, at the psychological consultative examination in October 2020, she had depressed mood and dysphoric affect, but she had a coherent and organized thought process, relevant and non-delusional thought content, normal speech, above average intellectual function, grossly intact fund of knowledge, and grossly intact insight and judgment. (Exhibit 6F) Regarding her concentration and calculation, she was able to spell the word "world" both forward and backward, she was able to

        perform serial sevens, calculation properly, and follow the conversation well. (Exhibit 6F) Thus, the undersigned finds no more than mild impairment in this area.

AR 20–21 (emphasis added).

    Plaintiff next argues the ALJ failed to demonstrate the consistency of Dr. Katzman's findings with other evidence in the record, the ALJ unlawfully asserted his own conclusory assessment of the record to support his conclusions, and the ALJ gave no indication which of Dr. Katzman's findings "were deemed persuasive or unpersuasive, let alone why." Dkt. No. 15 at 23–24. The ALJ did all of that, however, and did so in a non-conclusory manner. Immediately prior to discussing Dr. Katzman's recommendation of family counseling, the ALJ analyzed the record and found consistencies between Dr. Katzman's report and the mild limitation to which Drs. Jacobs and Nicholson opined. AR 28. The ALJ also found other opinions in the record consistent with a moderate limitation in Plaintiff's ability to interact with others, specifically citing Dr. Amado. AR 28.[6] Dr. Katzman did not opine on that issue.

    The ALJ also sufficiently articulated why he found the results of Dr. Katzman's report "partially persuasive" in his evaluation of the four functional areas (i.e., "it was supported by an in person exam, including multiple cognitive tests, but the record as a

---

[6] In addition to Dr. Amado's moderate limitation finding, the ALJ referenced treatment notes from Plaintiff's treating psychologist, Colette Lord, PhD, which also support the more restrictive moderate limitation in Plaintiff's interaction with others. AR 19–26 (citing repeatedly to Dr. Lord's notes at Exhibits 5F and 11F). Those notes are replete with evidence the ALJ cited to support Plaintiff's "ongoing issues with boundaries and compulsively contacting people at an unacceptable frequency" and tendency to focus "on her own wants and needs, oblivious or uncaring about the effect on others." AR 22, 25 (citing Exhibit 5F and 11F); *see* AR 373 (describing behavior such as incessantly contacting her children and impersonating others); AR 405 (describing "compulsive behavior, like leaving her lawyer 9 messages in a day").

whole, including individual therapy, was more consistent with moderate limitations in the claimant's ability to interact with others"). AR 28.

Finally, the Court also rejects Plaintiff's argument that the ALJ impermissibly cherry-picked portions of Dr. Katzman's opinion. Dkt. No. 15 at 22. The ALJ accurately summarized Dr. Katzman's report and cited relevant portions in formulating Plaintiff's RFC. AR 22, 23, 25 (citing AR 286–91). Although Plaintiff claims the ALJ "glossed over the results of the cognitive testing" (Dkt. No. 15 at 23), the ALJ wrote Plaintiff "was in the average range of cognitive functioning" (AR 25), which is consistent with Dr. Katzman's report (AR 288–89).[7]

In sum, the ALJ accurately articulated the findings in Dr. Katzman's report, evaluated its consistency with the opinions of other doctors, and considered it in the formulation of the RFC. The Court, therefore, finds no legal error in the ALJ's treatment of Dr. Katzman's report. *Woods*, 32 F.4th at 792 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source . . . and explain how it considered the supportability and consistency factors in reaching these findings") (quoting 20 C.F.R. § 404.1520c(b)).

### C. **Dr. Nicholson**

Dr. Nicholson examined Plaintiff on October 21, 2020, and opined that Plaintiff has mild limitations in each functional area. AR 443–51.[8]

The ALJ found this opinion fully persuasive at the time of the evaluation, except the ALJ assigned a higher moderate limitation to Plaintiff's ability to interact with others.

---

[7] In addition to describing scores "suggestive of just below average in tasks of sustaining herself to complete projects" and "just below average in tasks of focus and concentration," Dr. Katzman's report describes Plaintiff's "excellent ability to use common sense and make good judgments." AR 289.

[8] The ALJ mistakenly refers to Dr. Gregory Nicholson as "Dr. Nicholas Gregory" (AR 26) and "Dr. Gregory" (AR 28).

AR 26 ("subsequent treatment records showed consistent ongoing issues when interacting with others related to her relationship with her children.").

Plaintiff argues "the ALJ failed to articulate any consideration of the consistency factor" concerning Dr. Nicholson, and instead substituted his own opinion. Dkt. No. 15 at 25. Plaintiff also argues the ALJ failed to explain why he did not incorporate the mild limitations found by Dr. Nicholson into Plaintiff's RFC. *Id.* at 26. The Court disagrees.

Regarding consistency, the ALJ articulated that Dr. Nicholson found mild limitations in each functional area (AR 28), which the ALJ found consistent with Dr. Jacobs' and Dr. Katzman's mild limitation findings (*Id.*). The ALJ's only departure from Dr. Nicholson's opinion was to impose a higher moderate limitation on Plaintiff's ability to interact with others. *Id.* To support that finding, the ALJ cited subsequent treatment records that document Plaintiff's ongoing problems getting along with family, friends, neighbors and others. AR 21–26 (citing Exhibits 5F, 11F (subsequent treatment notes from Colette Lord, PhD)); *see also* AR 605, 609, 611–12, 614, 616, 619, 625, 628.

Also contrary to Plaintiff's argument, the ALJ incorporated the mild and moderate limitations in the RFC. In formulating the RFC, the ALJ considered each medical source's opinion and, based on those opinions, included non-exertional limitations regarding Plaintiff's interactions with others. AR 24, 26. And, in applying those RFC limitations to the ultimate disability determination, the ALJ found Plaintiff could not return to her past work as a paralegal because the demands of that position "exceeded the [RFC] findings." AR 29.

In sum, the ALJ evaluated the consistency of Dr. Nicholson's opinion with the other opinions in the record and incorporated the resulting limitations into Plaintiff's RFC. There is no error. *Rounds v. Comm'r of Social Security Administration*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

### D. Dr. Jacobs

Dr. Jacobs, a state agency mental health consultant, reviewed Plaintiff's medical record on February 4, 2020. AR 85. He opined Plaintiff's paragraph B mental health conditions resulted in mild limitations in some areas (i.e., "interact with others" and "concentrate, persist, or maintain pace") and no limitations in others (i.e., "understand, remember or apply information" and "adapt or manage oneself"). *Id.* Dr. Jacobs also noted Plaintiff had a primary history of "alcohol abuse and getting into trouble over that in terms of child custody and subsequent stress and anxiety over same." *Id.*

The ALJ found Dr. Jacobs' "opinion fully persuasive at the time of the evaluation, because it was supported by a summary analysis of [Plaintiff's] mental health treatment history with no more than mild psychological consultive examination findings despite her depression, post-traumatic stress disorder, and anxiety symptom complaints." AR 28. The ALJ did, however, find that the record as a whole, including updated treatment records, supported a more restrictive moderate rating regarding Plaintiff's ability to interact with others. *Id.* As an example supporting this more restrictive finding, the ALJ cited Plaintiff's "consistent boundary and impulse control issues when it came to her relationship with her children." *Id.*

Plaintiff challenges the accuracy of the ALJ's conclusion "that Dr. Jacobs' opinion was well supported by a summary analysis of Plaintiff's treatment history," and claims the ALJ "failed to articulate any consideration of the consistency factor." Dkt. No. 15 at 28. Plaintiff further contends the ALJ could not have found Dr. Jacobs' opinion persuasive because it was "patently incompatible with his own findings." *Id.*

The Court finds no error in the ALJ's analysis of Dr. Jacobs' opinion. As discussed, the ALJ evaluated Plaintiff's functional limitations (including those found by Dr. Jacobs) by reviewing the record as a whole. In assessing those limitations, the ALJ considered and explained how they are (or are not) consistent with the record. There is also no incompatibility between Dr. Jacobs' opinion (which the ALJ found "persuasive at the time of the evaluation") and the ALJ's more restrictive finding (which the ALJ based, in part,

on "updated treatment records"). AR 28; *see Godfrey v. Kijakazi*, 21-cv-00992-JLT-BAM, 2023 WL 2480805, at *8 (E.D. Cal. Mar. 13, 2023) ("[T]he ALJ sufficiently articulated the reasoning by summarizing the relevant record and testimony, then pointing to inconsistencies between [doctor's] opinion and the record as well as inconsistencies between [doctor's] opinion and Plaintiff's reported activities.").

## VI. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion(s) for Summary Judgment (Dkt. Nos. 14–15) and **GRANT** Defendant's Motion for Summary Judgment (Dkt. No. 16).

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the Court and served on all parties no later than **August 31, 2023**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 7, 2023**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156–57 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: August 17, 2023

Daniel E. Butcher
United States Magistrate Judge